BELLONI, District Judge.
 

 Peter Gottheiner appeals the decision of the district court, which affirmed the bankruptcy court’s decision
 
 [1]
 
 against him in an adversary proceeding. In that proceeding, the United States obtained a judgment against Gottheiner for violating federal priority statutes.
 
 [2]
 
 The bankruptcy court
 
 *1138
 
 based its judgment in part on a prior decision
 
 [3]
 
 against a wholly-owned corporation of Gottheiner’s. He now argues that the bankruptcy court clearly erred in giving collateral estoppel effect to the prior judgment and in disregarding the evidence as to other factual findings. We affirm the decision of,the district court.
 

 I
 

 In 1967 Peter Gottheiner, a registered physical therapist, and Robert Sitkin, a medical doctor, formed a corporation, California Coordinated Health Care Services, Inc. (CCHCS). At first Gottheiner owned half the corporation’s outstanding shares. By 1969 he had become the sole shareholder.
 

 CCHCS participated in the Medicare
 
 [4]
 
 program during 1968,1969 and 1970. Upon rendering services to patients, CCHCS would submit statements to the government’s agent and fiscal intermediary, Blue Cross, which in turn periodically paid CCHCS for its services on the basis of what the intermediary determined to be reasonable costs.
 
 [5]
 
 Blue Cross also periodically sent cash advances to CCHCS apart from the normal reimbursements.
 
 [6]
 

 During the years 1968-70 the corporation’s debts increasingly exceeded its assets. Nonetheless, during that period of mounting insolvency, and while continuing to receive advances from Blue Cross, Gottheiner directed CCHCS to make several loans and outright payments to himself, to other corporations in which he owned substantial shares, and to other third parties.
 

 The government considered these payments to be illegal. It considered CCHCS to be indebted to the United States in the amount of the cash advances from Blue Cross that CCHCS had not repaid. It further considered CCHCS to be insolvent by virtue of its continued excess of debts. It therefore concluded that any payments to creditors other than the United States constituted violations of federal priority law. As a result, in 1977 the government filed suit against CCHCS and Gottheiner for repayment of the cash advances before any further payments to other creditors were made.
 

 For sixteen months, Gottheiner, represented by counsel, defended himself and the corporation against the government’s lawsuit. Extensive discovery ensued, some of which was initiated by Gottheiner himself. Eventually the government moved for summary judgment against CCHCS. At this point, Gottheiner’s attorney asked to withdraw from the case. The district court refused to permit the attorney to withdraw. Still, Gottheiner presented no opposition to the government’s summary judgment motion.
 

 The district court granted the government’s motion for summary judgment and directed the judgment be entered against CCHCS. The basis of the judgment was that CCHCS was indebted to the United States and that despite this the corporation made payments to other claimants while insolvent. In ruling on the motion for summary judgment the district court said that it did not consider the fact that the motion went unopposed. Instead it reviewed the record on its own, and finding no genuine issues of material fact, granted the government’s motion.
 

 Two weeks after the court entered judgment, Gottheiner filed a personal bankruptcy petition. The government immediately
 
 *1139
 
 filed a complaint against Gottheiner, alleging that he is personally liable for violating federal priority statutes and that this liability should be nondischargeable.
 

 To prove its ease, the government had to show, among other things, that there was in fact a debt owed the United States. The government sought to prove this by simply offering a certified copy of the district court judgment against CCHCS. Gottheiner objected to the admissibility of the prior judgment, but he was overruled. He then attempted to controvert the effect of the judgment by offering evidence that CCHCS was not indebted to the United States. The bankruptcy court refused to admit such testimony. At the conclusion of the hearing, the bankruptcy court granted judgment in favor of the government and held Gottheiner’s debt nondischargeable.
 

 Gottheiner appealed to the United States District Court for the Northern District of California. The district court affirmed. This appeal follows.
 

 Gottheiner raises two issues on appeal. The first is whether the bankruptcy court incorrectly gave collateral estoppel effect to the prior district court judgment against CCHCS. The second is whether the bankruptcy court’s finding that Gottheiner knew that CCHCS was indebted to the government was clearly erroneous.
 

 II
 

 A. Collateral Estoppel
 

 Collateral estoppel will preclude relitigation of issues that have already been litigated in and were necessary to a prior judgment.
 
 Parklane Hosiery Co.
 
 v.
 
 Shore,
 
 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979);
 
 Mendoza v. United States,
 
 672 F.2d 1320, 1325 (9th Cir.1982). Its use as a means of avoiding needless litigation is left to the broad discretion of the trial court.
 
 Id.
 

 In this case the bankruptcy court considered the prior determination of the indebtedness of CCHCS as controlling in the later suit against Gottheiner. On collateral estoppel grounds, Gottheiner was not allowed to relitigate the issue of the corporation’s indebtedness at the bankruptcy trial. Gottheiner now argues that in so ruling, the bankruptcy court erred for two reasons. First, he contends, he is- not in privity with CCHCS. Second, he argues, the indebtedness of CCHCS was not actually litigated in the prior proceeding.
 

 1. Prívity
 

 Collateral estoppel is not generally applicable unless there exists either identity or privity between the parties to the relevant litigation. The person being estopped from relitigating an issue must have been either a party to the prior lawsuit or have been so closely related to the interest of the party to be fairly considered to have had his day in court.
 
 Chicago, Rock Island and Pacific Railway Co. v. Schendel,
 
 270 U.S. 611, 618, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1926);
 
 Hinkle Northwest, Inc. v. SEC,
 
 641 F.2d 1304, 1309 (9th Cir.1981).
 

 The lower courts considered Gottheiner and CCHCS to be so closely related as to be in privity. The bankruptcy court did not state its reason for this. The district court, in affirming, relied on the fact that Got-theiner was in complete ownership and control of the corporation. It is assumed by both parties that the bankruptcy court based its decision on the same ground.
 

 Gottheiner contends that the lower courts erred because in order to establish privity it must be shown that he actually controlled the prior litigation and had a direct financial interest in the outcome of that lawsuit. His ownership of CCHCS, he argues, is not sufficient. Applying this supposed test, Gottheiner argues that since he was without funds to hire an attorney and since the prior judgment resulted from his failure to oppose the government’s motion, he did not control the CCHCS litigation. He further argues that since CCHCS was completely defunct at the time, he had no financial interest in the outcome of the lawsuit against the corporation.
 

 Gottheiner’s argument assumes a definition of privity far more rigid than the
 
 *1140
 
 law requires. Privity exists when there is “substantial identity” between parties, that is, when there is sufficient commonality of interest.
 
 United States v. ITT Rayonier, Inc.,
 
 627 F.2d 996, 1003 (9th Cir.1980). When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest.
 
 Sparks Nugget, Inc.
 
 v.
 
 Commissioner,
 
 458 F.2d 631, 639 (9th Cir.1972). As this court has stated before, the public policies underlying the doctrine of collateral estoppel, “as a bar to repetitious litigation, would support a finding of privity between a close corporation and its sole or controlling stockholder.”
 
 Id. See also Drier v. Tarpon Oil Co.,
 
 522 F.2d 199, 200 (5th Cir.1975);
 
 United States
 
 v.
 
 Webber,
 
 396 F.2d 381, 386-88 (3rd Cir.1968);
 
 Warnecke v. Laclede Gas Co.,
 
 455 F.Supp. 444, 446 (E.D.Mo.1978),
 
 aff’d sub nom., Laclede Gas Co. v. G.W. Warnecke Corp.,
 
 604 F.2d 561 (8th Cir.1979). Here it is undisputed that Gottheiner owned all the outstanding shares of CCHCS stock and exercised control over its day to day affairs. Thus there is no question that privity exists and we conclude upon a
 
 de novo
 
 review of this legal issue that the lower court decided the issue correctly.
 

 2. Actually litigated
 

 Another prerequisite to the application of collateral estoppel is that the disputed issue must have been actually litigated in the prior proceeding.
 
 General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Brothers Truck Lines,
 
 682 F.2d 763, 768 (9th Cir.1982);
 
 American Triticale, Inc. v. Nytco Services, Inc.,
 
 664 F.2d 1136, 1147 (9th Cir.1982).
 

 Gottheiner contends that the lower courts erred in giving collateral estoppel effect to the judgment against CCHCS because the judgment was based on an uncontested motion for summary judgment and was therefore not actually litigated.
 

 It is true that some types of judgments are not given collateral estoppel ef-feet because the court did not get the benefit of ..deciding the issue in an adversarial context. In the case of a default judgment, for example, a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight. The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect.
 
 Spilman v. Harley,
 
 656 F.2d 224, 228 (6th Cir.1981);
 
 Commonwealth of Massachusetts v. Hale,
 
 618 F.2d 143, 146 (1st Cir.1980);
 
 Matter of McMillan,
 
 579 F.2d 289, 293 (3d Cir.1978).
 

 The circumstances here are quite different. Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation on behalf of himself and CCHCS. That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that the lower court did not abuse its discretion in giving collateral estoppel effect to the prior judgment and we agree, upon
 
 de novo
 
 review, that collateral estoppel properly was available to the government.
 
 Cf. Mendoza, 672
 
 F.2d at 1326-28 (Held: it was correct under the law and not an abuse of discretion to estop the government from relitigating in a pending naturalization proceeding certain constitutional issues decided in a previous naturalization case in which the government had chosen to withdraw its appeal).
 

 One of the elements of a violation of federal priority laws is that the individual spending the corporation’s money knew of the corporation’s debt to the United States at the time. 31 U.S.C. § 192 (1976);
 
 Want v. Commissioner,
 
 280 F.2d 777, 783 (2d Cir.1960);
 
 United States v. Vibradamp Corp.,
 
 257 F.Supp. 931, 935 (S.D.Cal.1966). In the bankruptcy proceeding below, the court found that Gottheiner did know of the indebtedness of CCHCS to the United States, based on a series of CCHCS reports to Blue Cross, and based on the testimony of a CCHCS accountant.
 

 
 *1141
 
 Gottheiner contends that this finding of fact is incorrect because the cash advances made to CCHCS were not debts in the first place, and because the evidence relied on by the bankruptcy judge does not prove that these were debts or that Gottheiner knew of them. Because this argument raises an issue of fact, the court below will be affirmed unless its findings are clearly erroneous. Fed.R.Bankr.P. 810;
 
 In Re Christian & Porter Aluminum Co. v. Titus,
 
 584 F.2d 326, 335 (9th Cir.1978). We find no evidence of error.
 

 Gottheiner’s argument misses the point to the extent he attacks the court’s finding not by denying that he knew of the debt to the United States but instead by attempting to slip in the backdoor an argument about the existence of the debt in the first place. The existence of the debt has been determined by the lower court by its application of the doctrine of collateral estoppel. The issue is not open to relitigation.
 

 To the extent Gottheiner argues that the evidence does not show that he knew of the debts he is wrong. Gottheiner concedes that his accountant advised him of the amount of money that Blue Cross advanced CCHCS. Because the Blue Cross advances were debts, Gottheiner received actual notice of them and the lower court was correct in so finding.
 

 The bankruptcy judge based his holding on this issue on the additional grounds that Gottheiner, as a corporate officer and director, could be presumed to know of the corporate indebtedness. Our
 
 de novo
 
 review of this legal conclusion convinces us of the correctness of this holding. As the owner and director of CCHCS Got-theiner was in control of the corporation’s affairs. Consequently, it must be assumed that, responsible to his duties, he was aware of all outstanding claims against the corporation.
 
 King v. United States,
 
 379 U.S. 329, 337, 85 S.Ct. 427, 431, 13 L.Ed.2d 315 (1964);
 
 United States
 
 v.
 
 Whitney,
 
 654 F.2d 607, 612 (9th Cir.1981);
 
 Lakeshore Apartments, Inc. v. United States,
 
 351 F.2d 349, 353 (9th Cir.1965).
 

 The decision of the district court is affirmed.
 

 [1]
 

 .
 
 In Re Gottheiner,
 
 3 B.R. 404 (Bkrtcy.N.D.Cal.1980).
 

 [2]
 

 . 31 U.S.C. §§ 191, 192 (1976) (amended 1978). The bankruptcy case from which this appeal arises was commenced on October 25, 1978. There is no dispute that, as a result, certain recent amendments to the federal priority statutes that eliminated the government’s priority rights in bankruptcy cases filed after October 1,
 
 *1138
 
 1979 are inapplicable.
 
 See
 
 Bankruptcy Act of 1978, Pub.L. No. 95-598, §§ 322(a), 322(b), 402(a), codified at 31 U.S.C. §§ 191, 192, 11 U.S.C. prec. § 101 (Supp. v. 1981).
 

 [3]
 

 .
 
 United States v. California Coordinated Health Care Services, Inc. and Peter Gottheiner,
 
 No. C-77-0413WTS (N.D.Cal. Oct. 6, 1978).
 

 [4]
 

 . The Medicare program was authorized by Congress in 1965 through the Health Insurance for the Aged Act (The Medicare Act), 42 U.S.C. § 1395 (1976).
 

 [5]
 

 . The Medicare Act provides for reimbursement by the government for the reasonable costs of medical services. 42 U.S.C. § 1395f(b) (1976).
 

 [6]
 

 . Blue Cross was authorized to do so by regulations then in effect. 20 C.F.R. § 405.454(g) (1967).