In re John V. SILVA, Debtor.

John V. SILVA, Appellant,

v.

SMITH'S PACIFIC SHRIMP, INC., Appellee.

BAP No. EW–94–2567–RHV.

Bankruptcy No. 94–00087–K1G.

Adv. No. A94–0060–K1G.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 18, 1995.

Decided Oct. 25, 1995.

Julio Morley, Spokane, WA, for appellant.

Anita G. Manishan, Portland, OR, for appellee.

Before RUSSELL, VOLINN and HAGAN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

This appeal arises from the granting of a motion for summary judgment declaring a federal court judgment to be nondischargeable. The debtor appeals. We REVERSE and REMAND.

## I. FACTS

The debtor/appellant, John V. Silva ("Silva") was an employee of Supreme Foods, Inc. ("Supreme Foods"), a Washington corporation, which distributed seafood products.

Sometime in 1991, Supreme Foods contacted the appellee, Smith's Pacific Shrimp, Inc. ("Smith's"), an Oregon corporation, to acquire "quick frozen" shrimp for retail sale. In order to purchase the "quick frozen"

shrimp on credit, Smith's required Supreme Foods to provide trade references.

Smith's telephoned the trade references who assured Smith's that Supreme Foods was credit worthy. Unknown to Smith's, Supreme Foods maintained separate phone lines to provide fraudulent credit references.

Apparently, upon receipt of the requested shrimp from Smith's, Supreme Foods would remove the "quick frozen" shrimp from its packaging and repack Smith's boxes with inferior shrimp frozen in clumps of ice. The inferior shrimp was then resold in Smith's packaging in different states while the other "quick frozen" shrimp was sold by Supreme Foods.

On September 24, 1991, Smith's filed a federal lawsuit in the United States District Court for the District of Oregon against Supreme Foods and its officers, directors and employees, including Silva. Smith's complaint alleged six causes of action: (1) goods sold and delivered; (2) misrepresentation; (3) interference with business relations; (4) federal racketeering; (5) Oregon state racketeering; and (6) quantum meruit.

The president of Supreme Foods informed Silva that the corporation retained counsel for all of the named defendants, including Silva. Supreme Foods' attorney assured Silva that he would " 'take care of' the legal matter," but failed to take any further action.

On February 18, 1992, Silva filed a general denial to Smith's complaint in *pro se*. According to Smith's counsel, Silva's denial appeared to be a "tintype" (i.e. identical except for the debtor's name) of all the other general denials filed by the answering defendants. Silva failed to file any other responsive pleadings because he lacked the finances to travel to Oregon from Washington to defend himself in the matter.

In February 1993, Smith's filed a motion for summary judgment against Silva and the other named defendants. Neither Silva nor the other named defendants filed a response to Smith's motion. Smith's also filed a motion for entry of a default judgment against the other defendants who failed to file an answer to the complaint.

On March 26, 1993, the district court granted Smith's motion for summary judgment against Silva and the other defendants. The district court concluded that "there was no just reason for delay of the entry of judgment." In addition, the court granted Smith's motion for default judgment against the non-answering defendants. The district court awarded $182,920 plus interest, as well as attorneys' fees and costs, to Smith's against the defendants jointly and severally ("federal court judgment").

On January 12, 1994, Silva filed his chapter 7 petition. On March 17, 1994, Smith's filed a complaint to determine the dischargeability of the federal court judgment.

Shortly thereafter, Smith's filed a motion for summary judgment claiming that Silva was collaterally estopped from relitigating the dischargeability of the federal court judgment.

On November 29, 1994, the bankruptcy court agreed with Smith's that the doctrine of collateral estoppel applied, and entered a judgment in favor of Smith's declaring the federal court judgment to be nondischargeable.

Silva timely filed his notice of appeal.

## II. ISSUE

Whether an unopposed motion for summary judgment is "actually litigated" so as to be entitled to collateral estoppel effect in a subsequent action.

## III. STANDARD OF REVIEW

 A grant of summary judgment is reviewed *de novo*. *Halverson v. Skagit County*, 42 F.3d 1257, 1259 (9th Cir.1994); *In re Kelly*, 182 B.R. 255, 257 (9th Cir. BAP 1995). An appellate court's review is governed by the same standard used by the trial courts under Fed.R.Civ.P. 56(c). *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Fed.R.Civ.P. 56 is applicable to bankruptcy proceedings through Fed.R.Bankr.P. 7056. An appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the trial court correctly applied the relevant

substantive law. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994).

■ The panel applies a *de novo* standard for reviewing the question of the availability of collateral estoppel. *Kelly,* 182 B.R. at 258; *In re Berr,* 172 B.R. 299, 304 (9th Cir. BAP 1994).

## IV. DISCUSSION

### A. *Collateral Estoppel*

■ In order for a prior judgment to be entitled to collateral estoppel effect, five elements must be met:[1]

1) The issue sought to be precluded from relitigation must be identical to that decided in à former proceeding;

2) The issue must have been actually litigated in the former proceeding;

3) It must have been necessarily decided in the former proceeding;

4) The decision in the former proceeding must be final and on the merits; and

5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Figueroa v. Campbell Indus.,* 45 F.3d 311, 315 (9th Cir.1995); *Kelly,* 182 B.R. at 258; *Berr,* 172 B.R. at 306. *See generally,* 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.441–43 (2d ed. 1994).

■ The party seeking to assert collateral estoppel has the burden of proving all the requisites for its application. To sustain this burden, the party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing collateral estoppel effect. *Spilman v. Harley,* 656 F.2d 224, 227–28 (6th Cir.1981); *Matter of Merrill,* 594 F.2d 1064, 1067 (5th Cir.1979).[2]

■ The doctrine of collateral estoppel serves the purpose of protecting parties from multiple lawsuits, the possibility of inconsistent decisions, and conserves judicial resources. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 553, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504 (1990); *Montana v. U.S.,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The United States Supreme Court has recognized that the doctrine of collateral estoppel applies in dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Thus, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Montana,* 440 U.S. at 153, 99 S.Ct. at 973.

### 1. *Were the Issues "Actually Litigated?"*

■ The outcome of this case depends on whether the issue of Silva's alleged fraudu-

---

**1.** It appears that the Ninth Circuit Court of Appeals is the only circuit that applies the forum state's law to determine the preclusive effect of a prior federal diversity judgment. *Bates v. Union Oil Co. of California,* 944 F.2d 647, 649 (9th Cir.1991) *cert. denied,* 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992). Most circuit courts that have addressed the issue have adopted the rule that in federal diversity cases, federal law governs the preclusive effect of a prior federal judgment. *See, e.g., RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 n. 11 (5th Cir.1995); *E.E.O.C. v. Harris Chernin, Inc.,* 10 F.3d 1286, 1289 n. 4 (7th Cir.1993); *Johnson v. SCA Disposal Servs. of New England,* 931 F.2d 970, 974 (1st Cir.1991); *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.,* 880 F.2d 1291, 1293 n. 2 (11th Cir.1989). *See also Berr,* 172 B.R. at

306 (applying federal law to determine the preclusive effect of a prior federal diversity judgment).

While the end result is the same, we must apply Washington law to determine the preclusive effect of the prior federal diversity judgment. Under Washington law, a Washington court would apply federal law to determine the preclusive effect of a prior federal judgment. *Alcantara v. Boeing Co.,* 41 Wash.App. 675, 678, 705 P.2d 1222, 1225 (1985).

**2.** Although the parties cited *In re Nourbakhsh,* 162 B.R. 841 (9th Cir. BAP 1994), it is not relevant because it was not a diversity case and it involved a prior state court judgment. In this case, the prior judgment was entered in federal court.

lent conduct was "actually litigated" in the prior federal court action. In order to properly apply the doctrine of collateral estoppel, a bankruptcy court must look at the entire record of the prior proceeding, not just the judgment.

If the issues were not "actually litigated" in the prior proceeding, then collateral estoppel does not bar relitigation in the bankruptcy court. Generally, a default judgment, or other case where a court did not have the benefit of deciding the issue in an adversarial context, is not entitled to preclusive effect because there was no actual litigation. *See In re Raynor*, 922 F.2d 1146, 1149–50 (4th Cir.1991); *In re Lombard*, 739 F.2d 499, 502 (10th Cir.1984); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983).

We find *In re Dvorak*, 118 B.R. 619 (Bankr.N.D.Ill.1990) very persuasive. In *Dvorak*, the debtor was sued for malpractice in state court where an unopposed motion for summary judgment was entered against the debtor. The debtor filed an answer in the malpractice case, but did not respond to the summary judgment motion. The bankruptcy court held that collateral estoppel was not applicable because the issue of the debtor's conduct was not "actually litigated."

More specifically, the bankruptcy court concluded:

> When judgment is entered pursuant to an unopposed motion for summary judgment, as with most default judgments, the court has not heard the arguments or evidence of the party against whom judgment was entered. Examination by a court of documentary evidence submitted by one party in support of its motion for summary judgment to see if plaintiff's *prima facie* burden is met is qualitatively different from a court or jury evaluating evidence after the opposing party has contested the moving party's evidence. The phrase "actually litigated" suggests that all parties to a dispute have been actively involved throughout the proceeding and have presented evidence and advocated their positions. The phrase "actually litigated" should not be read to refer only to the level of independent judicial inquiry into the *prima*

*facie* showing of facts underlying an undefended motion for summary judgment.

> Therefore, Debtor here is not collaterally estopped by the unopposed state court summary judgment against him from litigating the issue of whether his conduct was willful and malicious. That issue was not "actually litigated" in state court. A contrary conclusion might well be reached had the debtor actively opposed the motion but lost because he presented no triable issue of fact and lost under the applicable rule of law. However, that is not this case, and collateral estoppel does not apply here.

118 B.R. at 626–27 (footnotes omitted).

In the present case, the federal court judgment and decision made little reference to Silva. In fact, Silva was only mentioned once in the judgment, once in the district court's fifteen page decision, and in only one of the two affidavits filed in support of Smith's motion for summary judgment in the prior federal action.

The federal court judgment stated:

> IT IS HEREBY ORDERED that plaintiff is awarded final judgment against defendants ... John Silva, ... jointly and severally, ... for the sum of $182,920.00, together with interest....

The district court opinion stated:

> Following the filing of plaintiff's complaint, .... [d]efendant Silva ... filed general denials. Plaintiff now moves for summary judgment as against Silva.... None of the subject defendants have filed a response to the motion.

The only affidavit that made reference to Silva, incorrectly stated that he was indicted:

> 11. ... Silva ... worked for Hickory Hills, as well as Supreme and served in all positions.
>
> ....
>
> 13. All defendants were indicted in Federal District Court for the Eastern District of Washington for substantially the same conduct and activities complained of in the complaint in the case at bar....

The evidence presented in the motion for summary judgment in the district court only established minimal conduct by Silva. In

fact, we know that since Silva was not indicted, that the allegations in the affidavit, that all defendants were indicted was false.

The record indicates that whatever role Silva had in Supreme Food's fraudulent scheme, it was minor compared to the other co-defendants who were all subsequently indicted on fifty counts of wire fraud in violation of 18 U.S.C. § 1343, as well as other criminal charges. In fact, there is little in the record except that he was an employee of Supreme Foods.

In explaining its order granting Smith's motion for summary judgment, the bankruptcy court noted:

> The Ninth Circuit Court of Appeals has recognized that, while a default judgment may not under all circumstances be given the preclusionary effect of collateral estoppel, the concept of "actually litigated" does not on the other hand require a trial on the merits. *In re Gottheiner,* 703 F.2d 1136 (9th Cir.1983).

> In the case at bar the District Court in Oregon did, as in *Gottheiner,* "actually get the benefit of deciding the issue in an adversarial context." Evidence was presented by the plaintiff on its motion for summary judgment which was carefully considered by the Court and the Court thereupon delivered a comprehensive opinion. The debtor was an actual participant in the litigation and had the opportunity to contradict or complement the evidence submitted, and he chose not to do so. I consider these facts to be substantially the same as the facts in *Gottheiner* and conclude that the concept of "actually litigated" has been satisfied.

In fact, this case is distinguishable from *Gottheiner.* In *Gottheiner,* the government brought suit against the debtor, his partner and his corporation for collection of a debt owed to the United States based on cash advances paid by Blue Cross for medicare services. For sixteen months, the debtor, represented by counsel, defended himself and the corporation against the government's lawsuit. Extensive discovery commenced, including some initiated by the debtor.

Eventually, the government moved for summary judgment against the corporation. At that point, the debtor's counsel asked to withdraw from the case. The district court refused to allow the attorney to withdraw. The debtor presented no opposition to the government's summary judgment motion. The district court granted the government's motion for summary judgment.

Two weeks after the district court entered its judgment, the debtor filed his bankruptcy petition. The government filed a complaint to determine the dischargeability of the district court judgment. The bankruptcy court declared the debt to be nondischargeable. The debtor appealed to the district court. The district court affirmed.

On appeal to the Ninth Circuit, the debtor challenged the bankruptcy court's use of collateral estoppel to preclude him from litigating the issue of dischargeability. As to the "actually litigated" requirement, the debtor argued that the bankruptcy court erred in giving collateral estoppel effect because the district court based its judgment on an uncontested motion for summary judgment. Therefore the issue was not "actually litigated."

The Ninth Circuit, in affirming the district court, found that the debtor's conduct was not the same as an ordinary defaulting party since he had actively participated in the case for sixteen months before deciding the case was no longer worth his effort. 703 F.2d at 1140.

Reviewing the record before us, unlike the facts in *Gottheiner,* it appears that there was no active participation by the debtor in the summary judgment proceeding. Therefore, we reverse the bankruptcy court's order granting the motion for summary judgment and remand for trial on the merits.

## V. CONCLUSION

Because the issue of Silva's fraudulent conduct was not "actually litigated" in the prior federal court judgment, the judgment is not entitled to collateral estoppel effect. The order granting summary judgment in favor of Smith's must be reversed and a trial should be conducted on the issue of the dis-

chargeability of the federal court judgment. Accordingly, we REVERSE and REMAND.