| WILLIAM "BILL" JONES, IV | * | NO. 2021-CA-0504 |
| AND ENGELIQUE JONES AND | | |
| THE SUCCESSION OF | * | |
| CONNIE MARABLE | | COURT OF APPEAL |
| | * | |
| VERSUS | | FOURTH CIRCUIT |
| | * | |
| DAIMLER TRUCKS NORTH | | STATE OF LOUISIANA |
| AMERICA, INC., CITY OF | * * * * * * * | |
| NEW ORLEANS 911 | | |
| SERVICES AND EMS AND | | |
| FIRE DEPARTMENT AND | | |
| CHARLES CANAN | | |

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| WAYNE MARABLE | NO. 2021-CA-0505 |

VERSUS

DAIMLER TRUCKS NORTH
AMERICA, LLC, CITY OF NEW
ORLEANS, 911 SERVICES, NEW
ORLEANS EMS, NEW ORLEANS
FIRE DEPARTMENT, CHARLES
CANAN, AND JANE DOE

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01055, DIVISION "B-5"
Honorable Rachael Johnson,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Dale N. Atkins)
JENKINS, J., DISSENTS WITH REASONS

Caleb H. Didriksen, III
Erin Bruce Saucier
Carl A. "Trey" Woods, Esq.
DIDRIKSEN SAUCIER WOODS & PICHON
3114 Canal Street
New Orleans, LA 70119

COUNSEL FOR PLAINTIFF/APPELLANT

C.G. Norwood, Jr.
Patrick J. O'Cain
McGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130

Janika D. Polk
Lee B. Ziffer
KUCHLER POLK WEINER, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**February 23, 2022**

This is a wrongful death case. The narrow issue presented is whether the trial court erred in sustaining the peremptory exception of res judicata, based on issue preclusion (collateral estoppel), filed by one of the defendants—Daimler Trucks North America, LLC ("DTNA")—and dismissing the wrongful death claims asserted against DTNA by two of the plaintiffs—William Jones, IV, and his sister, Engelique Jones (collectively the "Jones"). Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2012, Connie Marable was seriously injured when she lost her footing and fell beneath an unoccupied, but moving, over-the-road tractor—a truck that pulls a tractor-trailer—owned by her husband, Wayne Marable, and manufactured by DTNA.[1] The serious injuries that Ms. Marable sustained included

---

[1] The underlying facts of the accident are not in dispute; as the federal district court in its remand order in this case observed, the accident occurred as follows:

> In early May of 2012, Wayne Marable drove his 2007 Freightliner Columbia [Tractor] ("tractor") to the parking lot of the Lowe's Home Improvement in New Orleans East where he parked it when not in use. On or about May 14, 2012, Wayne and his wife, Connie Marable ("decedent"), drove to the Lowe's parking lot where the tractor was parked. After arriving at the parking lot, Wayne Marable started the engine of the tractor after ensuring the brake was engaged. He then began a pre-trip inspection of the tractor and began loading his personal items. Suddenly, with no one in the cab, the tractor started moving forward. Connie Marable ran toward the tractor in an attempt to turn the engine

1

an anoxic brain injury. As a result, she was interdicted; and curators were appointed to represent her.

In November 2012, Mr. Marable filed suit, on his own behalf and on Ms. Marable's behalf, against Empire Truck Sales and its general manager Curtis Hudspeth (collectively "Empire"), alleging that Empire's work on the truck in April 2012 caused the accident that injured Ms. Marable. (This suit is referred to as the "Marables' Suit.")

Several months later, in May 2013, Ms. Marable's adult children from a previous marriage—the Jones—filed suit on their own behalf against not only Empire, but also multiple other defendants, including DTNA.[2] In their petition, the Jones averred that DTNA was negligent in the defective design of the truck. In this suit, the Jones sought to recover loss of consortium damages. (This suit is referred to as the "Jones' Loss of Consortium Suit.")

In July 2013, Empire filed a motion to transfer and consolidate the Jones' Loss of Consortium Suit with the Marables' Suit. In August 2013, the motion to transfer and consolidate was granted.

In September 2013, DTNA filed a summary judgment motion as to the Jones' claims asserted against it in the Jones' Loss of Consortium Suit. Following

---

off. She fell and was struck and dragged by the tractor, and when it came to rest, she was pinned to the ground with the tractor on top of her.

*Jones v. Daimler Trucks N. Am., LLC*, CV 19-4312 c/w 19-4332, 2019 WL 3956251, at *1 (E.D. La. Aug. 22, 2019).

[2] The other named defendants in this action were Mr. Marable; Great West Casualty Company, Mr. Marable's insurer; and KLLM Transport Services, L.L.C. ("KLLM"), Mr. Marable's employer and the lessor of the truck.

a hearing, the trial court granted DTNA's summary judgment motion. In its written judgment, dated January 24, 2014, the trial court stated that the "plaintiffs' claims against [DTNA] be and are dismissed, with prejudice, at each party's own cost." The Jones did not appeal that judgment. Thereafter, the Jones resolved their claims against the other defendants named in the Jones' Loss of Consortium Suit; hence, the Jones' Loss of Consortium Suit never went to trial.

In April 2014, DTNA was joined as a defendant for the first time in the Marables' Suit. In April 2016, a jury trial was held in that case. The jury apportioned fault for the 2012 accident as follows: 90% to DTNA, and 10% to Mr. Marable.[3] The judgment in that suit was affirmed on appeal. *Marable v. Empire Truck Sales of Louisiana, LLC*, 16-0876, 16-0877, 16-0878 (La. App. 4 Cir. 6/23/17), 221 So.3d 880, *writ denied*, 17-1469 (La. 11/13/17), 230 So.3d 210. The Jones were never joined as parties to the Marables' Suit.

In March 2018, Ms. Marable passed away. In January 2019, the Jones filed this wrongful death suit against not only DTNA, but also the "City of New Orleans 911 Services, and EMS and Fire Department and Charles Canan" (collectively the "First Responders").[4] (This suit is referred to as the "Jones' Wrongful Death Suit.")

In response, DTNA removed this suit to federal court. The federal court granted the Jones' motion to remand. *Jones v. Daimler Trucks N. Am., LLC*, CV

---

[3] The jury verdict form in the Marables' Suit listed the parties among whom the jury was asked to apportion fault as follows: DTNA, Mr. Marable, Empire, and KLLM.

[4] Mr. Marable filed a separate wrongful death action, which was consolidated with the Jones' Wrongful Death Suit. This action is not pertinent to this appeal.

19-4312 c/w 19-4332, 2019 WL 3956251 (E.D. La. Aug. 22, 2019). After the case was remanded, DTNA filed a peremptory exception of res judicata. The trial court sustained DTNA's exception and dismissed the Jones' wrongful death claims against DTNA. The trial court also denied the Jones' motion for new trial. This appeal followed.

## DISCUSSION

On appeal, the sole issue is whether the trial court erred in sustaining the peremptory exception of res judicata.

*Standard of Review and Res Judicata Principles*

In reviewing a trial court's ruling on a res judicata exception, this court reviews factual issues under a manifest error standard and legal issues under a *de novo* standard. *Armbruster v. Anderson*, 18-0055, p. 7 (La. App. 4 Cir. 6/27/18), 250 So.3d 310, 315.[5] The res judicata doctrine in Louisiana is *stricti juris*; "any doubt regarding the application of the doctrine must be resolved against its application." *Board of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co., Inc.*, 14-0641, p. 6 (La. App. 4 Cir. 11/19/14), 154 So.3d 683, 688 (collecting cases).

The Louisiana Legislature codified in La. R.S. 13:4231 an umbrella concept of res judicata, which "embraces the broad usage of the phrase 'res judicata' to include both claim preclusion ([traditional] res judicata) and issue preclusion (collateral estoppel)." *Maschek v. Cartemps USA*, 04-1031, p. 5 (La. App. 4 Cir. 2/16/05), 896 So.2d 1189, 1193.

---

[5] Because we find the issues presented on this appeal are legal ones, we find it unnecessary to address the evidentiary issues DTNA raises.

4

DTNA's res judicata exception is based solely on issue preclusion (collateral estoppel). DTNA concedes that the requirements necessary to invoke traditional res judicata (claim preclusion) are not met. Traditional res judicata (claim preclusion) requires, among other things, that the cause of action asserted in the second suit have existed at the time of the final judgment in the first suit. La. R.S. 13:4231(2). DTNA emphasizes that it has never contended the wrongful death cause of action asserted in the Jones' Wrongful Death Suit existed when the trial court entered the January 24, 2014 judgment in the Jones' Loss of Consortium Suit. Indeed, DTNA concedes this point, given that Ms. Marable did not die until four years later, *See Walls v. Am. Optical Corp.*, 98-0455, p. 9 (La. 9/8/99), 740 So.2d 1262, 1270 (observing that "the plaintiffs' injury in a wrongful death action occurs when the victim dies" and that "the wrongful death action could not arise until the date of the victim's death"). This appeal, thus, involves only the question of whether issue preclusion (collateral estoppel) applies.

Issue preclusion only can be invoked when all its essential elements are present; and "each necessary element must be established beyond all question." *Kelty v. Brumfield*, 93-1142 p. 8 (La.2/25/94), 633 So.2d 1210, 1215. Because La. R.S. 13:4231 is "modeled on federal preclusion doctrine and the Restatement of Judgments, federal jurisprudence may be consulted when the relevant Louisiana cases leave doubt as to the meaning of the statute." *Sevin v. Parish of Jefferson*, 632 F.Supp.2d 586, 595 (E.D. La. 2008) (citing *In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005)).

Issue preclusion is codified in La. R.S.13:4231(3), which provides that "[a] [valid and final] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue

5

actually litigated and determined if its determination was essential to that judgment." Under issue preclusion, "[o]nce a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties." *Sanchez v. Georgia Gulf Corp.*, 02-1617, p. 14 (La. App. 1 Cir. 8/13/03), 853 So.2d 697, 706.

The jurisprudence has construed La. R.S. 13:4231(3) as requiring that the following three elements be present for issue preclusion to apply: (i) a valid and final judgment; (ii) identity of the parties; and (iii) an issue that has been actually litigated and determined if its determination was essential to the prior judgment. *Liberty Mut. Fire Ins. Co. v. Weaver*, 16-1008, p. 4 (La. App. 3 Cir. 5/10/17), 219 So.3d 442, 445-46; *Glob. Mktg. Sols., L.L.C. v. Chevron U.S.A. Inc.*, 18-1765, p. 10 (La. App. 1 Cir. 9/27/19), 286 So.3d 1054, 1061. We separately address each of the three elements required for issue preclusion to apply.

*Valid and Final Judgment*

The first element—valid and final judgment—is undisputed here. DTNA's res judicata exception is premised on the trial court's January 24, 2014 judgment, granting its summary judgment motion in the Jones' Loss of Consortium Suit. The Jones did not appeal the January 24, 2014 judgment. Nor do the Jones dispute that the judgment is both a valid and final judgment. The first element is met.

*Identical Parties*

The second element requires that the parties in both proceedings be identical. The Jones contend that this element is not met because the First Responders were not parties to the Jones' Loss of Consortium Suit. We find this argument unpersuasive.

6

A comparison on the parties in the Jones' Loss of Consortium Suit and the the Jones' Wrongful Death Suit establishes that the identity of parties element is met. The plaintiffs in both cases are the same—the Jones—and the pertinent defendant in both cases is the same—DTNA. Contrary to the Jones' contention, the addition in the present case (the Jones' Wrongful death Suit) of new defendants—the First Responders—does not defeat the identity of parties requirement. As DTNA points out, it is well settled that a plaintiff "cannot, by merely adding parties, diminish the force and effect of the peremptory exception of res judicata as between all the parties with whom he has litigated the issues to a final judgment." *Lowe v. Rivers*, 445 So.2d 105, 107 (La. App. 2d Cir. 1984) (internal citations and quotations omitted).[6] The second element is met.

*Actually Litigated*

The third and final element required for issue preclusion to apply is that "the issue must be one that has been actually litigated and determined in the prior action, and its determination must have been essential to the prior judgment." *Global Mktg. Sols.*, 18-1765, p. 12, 286 So.3d at 1063. Stated differently, "[i]ssue preclusion requires the issue to be precluded to have been a dispositive issue which the prior court *must have considered* in a contest between the same parties." *Goodman v. Spillers*, 28,933, p. 11 (La. App. 2 Cir. 12/23/96), 686 So.2d 160, 167 (emphasis in original).

---

[6] *See also Austin v. Markey*, 08-381, p. 5 (La. App. 5 Cir. 11/25/08), 2 So.3d 438, 441 (observing that "[p]laintiff cannot now defeat State Farm's exception of res judicata by the naming of additional defendants"); *Building Engineering Service Co. v. State of Louisiana*, 441 So 2d 417, 421(La. App. 4th Cir. 1983) (citing *Johnson v. Lemons*, 157 So.2d 752 (La. App. 2d Cir.1963), and observing that "the plaintiff could not, by merely adding parties, diminish the force and effect of a peremptory exception of res judicata against all parties with whom he had litigated issues to final judgment").

Considering the actually litigated requirement, the jurisprudence has observed:

> There is nothing in the case law defining the term "actually litigated" to require a trial or evidentiary hearing. . . . Louisiana law does not mandate that an issue must be decided after a trial or evidentiary hearing to be considered "actually litigated." Such a requirement is clearly absent from the Louisiana statute setting forth the requirements of issue preclusion.

*Keaty*, 397 F.3d at 271. An issue resolved on a summary judgment motion can satisfy the actually litigated requirement. *Id.* at 271-72 (observing that courts "apply the doctrine of issue preclusion to issues decided on summary judgment— which itself does not require a trial or evidentiary hearing").

With these principles in mind, we address the following three contentions asserted by the Jones in support of their position that the actually litigated requirement is not met:

- Limited Issue Decided—Because DTNA asked that the summary judgment be a limited finding about the Jones' ability to meet its burden of proof;

- Consent—Because the Jones consented to the summary judgment; and

- Fault Finding—Because the trial court judge declined, when asked, to find that DTNA was absolved from fault.

**Limited Issue Decided**

The Jones seek to frame the issue decided by the trial court on DTNA's summary judgment motion as a narrow one. They contend that DTNA asked that the summary judgment be limited to a finding as to the Jones' ability to meet their burden of proof and that the issue of DTNA's liability was never decided in the Jones' Loss of Consortium Suit.

DTNA counters that issue preclusion (collateral estoppel) applies to issues of fact and law and that a summary judgment motion presents an issue of law. *See Magie v. Patio Motel, Inc.*, 301 So.2d 381, 382 (La. App. 4th Cir. 1974) (observing

the purpose of the summary judgment procedure is "to expeditiously dispose of cases involving only issues of law"). DTNA submits that the legal issue that the trial court decided in the January 24, 2014 judgment was whether, as a matter of law, DTNA was liable to the Jones for the 2012 accident. DTNA asserts that the determination of the legal issue of its liability was essential to the judgment because La. C.C.P. art. 966 precludes a court from granting summary judgment unless "the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). We find this argument persuasive.

This court has observed that "[a] motion for summary judgment, even if unopposed, requires the district court to determine that there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law." *Caceres v. United Auto. Ins. Co.*, 14-0418, p. 10 (La. App. 4 Cir. 11/5/14), 154 So.3d 584, 590. Hence, "[a] judgment granting a motion for summary judgment represents an adjudication of all or part of the merits of a case based on the failure of the party opposing the motion to raise any genuine issues of material fact to controvert the prima facie case made by the mover." *Young v. Dupre Transp. Co.*, 97-0591, p. 1 (La. App. 4 Cir. 10/1/97), 700 So.2d 1156, 1157. For these reasons, we find, as DTNA contends, that the issue presented by DTNA's summary judgment motion was not simply the insufficiency of the Jones' evidence; rather, the issue was whether, as a matter of law, DTNA was liable to the Jones for the 2012 accident.

**Consent**

The Jones next contend that because they consented to the granting of DTNA's summary judgment motion, the issue of DTNA's liability was not actually litigated. In support, they cite the principle that "'[i]n the case of a

9

judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of [issue preclusion] does not apply with respect to any issue in a subsequent action.'" *John Crane, Inc. v. Puller*, 169 Md.App. 1, 899 A.2d 879, 898-99 (2006) (quoting Comment (e) to the RESTATEMENT (SECOND) OF JUDGMENTS, §27 (1980)). The Jones additionally cite the principle that Louisiana courts have denounced the application of res judicata principles when the issues in the subject cases were never settled, litigated, or adjudicated. *See Igbokwe v. Moser*, 12-1366, p. 6 (La. App. 4 Cir. 4/24/13), 116 So.3d 727, 731.

A similar argument that an uncontested summary judgment does not satisfy the actually litigated requirement for issue preclusion (collateral estoppel) was addressed in *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983). There, the federal appellate court observed that "some types of judgments are not given collateral estoppel effect because the court did not get the benefit of deciding the issue in an adversarial context." *Id*. at 1140. But, the federal appellate court found the circumstances in which the uncontested summary judgment at issue before it was decided were quite different, observing: "Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation on behalf of himself and CCHCS. That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court." *Id*. The federal appellate court, thus, affirmed the district court's finding that collateral estoppel applied.

As in the *Gottheiner* case, we cannot conclude that the Jones did not have their day in court. In response to DTNA's summary judgment motion, the Jones requested and obtained a continuance of the hearing on DTNA's motion to allow them additional time to conduct discovery. Both the Jones and Empire formally

10

opposed DTNA's motion, filing oppositions and exhibits into the record and arguing that summary judgment was inappropriate. At the summary judgment hearing, the Jones' counsel simply stated that he was not opposing the trial court's granting of DTNA's summary judgment motion. Given the circumstances presented here, we find, as DTNA contends, that the record defeats the Jones' contention that the summary judgment motion was entered by consent.

**Fault Finding**

The third and final reason the Jones contend that the actually litigated requirement is not met is because the trial court judge declined to absolve DTNA from fault, when requested to do so by DTNA. According to the Jones, DTNA made this request by submitting to the trial court two alternative proposed judgments—one with the La. C.C.P. art. 966(G) language; one without that language. The trial court chose to render the judgment without that language; stated otherwise, the trial court chose to not include a specific reference to La. C.C.P. art. 966(G) in the January 24, 2014 judgment.

At the time of the summary judgment hearing, La. C.C.P. art. 966(G) provided that "when a partial motion for summary judgment was granted and one of multiple defendants was found not at fault or not liable, that party was not to be considered later in any allocation of fault or placed on the jury verdict form. . . . However, . . . in order for Paragraph (G) to apply, the trial court judge had to explicitly specify its applicability in the judgment." Garrett Filetti, *22nd Time's the Charm: The 2015 Revisions to Summary Judgment in Louisiana*, 77 LA. L.REV. 479, 501 (2016).[7] If the trial judge failed to specify that La. C.C.P. art. 966(G)

---

[7] The effect of the inclusion of this language in the judgment is that it precludes the remaining defendants from invoking an empty-chair defense. As this court has observed, an empty-chair

11

applied in the judgment, it did not apply.[8] Such was the case with the January 24, 2014 judgment.

According to the Jones, implicit in former La. C.C.P. art. 966(G) was the existence of two types of summary judgments—those when the trial court made a determination of fault and those when a claim was dismissed for other reasons. The Jones contend that DTNA asked the trial court judge for, but was denied, the type of summary judgment in which a determination of fault was made. Given that DTNA's fault was not determined in the January 24, 2014 judgment, the Jones contend the issue of DTNA's fault was not actually litigated and that issue preclusion does not apply. Indeed, the Jones emphasize that a jury in the Marables' Case subsequently considered DTNA's fault for the 2012 accident and allocated 90% of the fault to DTNA.

DTNA counters that the Jones' arguments that issue preclusion cannot apply because a jury in the Marables' Case found DTNA liable to Ms. Marable for the 2012 accident and because the January 24, 2014 judgment did not preclude parties other than the Jones from litigating DTNA's fault for the 2012 accident have no legal support. We agree.

First, the outcome of the Marables' Suit—the jury's allocation of 90% of the fault to DTNA in that case—is immaterial to the dispute presented here of whether issue preclusion applies. The dispute here is between the Jones and DTNA; the dispute in the Marables' Suit was between Ms. Marable and DTNA. As noted

---

defense is "'[a] trial tactic in a multiparty case whereby one defendant attempts to put all the fault on a defendant who ... settled before trial or on a person who was [not] . . . named as a party.'" Pizani *v. St. Bernard Par.*, 12-1084, pp. 7-8 (La. App. 4 Cir. 9/26/13), 125 So.3d 546, 552 (quoting Bryan A. Garner, BLACK'S LAW DICTIONARY, 567 (8th ed. 2004)).

[8] This requirement was codified in former La. C.C.P. art. 966(G)(2), which was in effect from August 2013 to January 2016, when the requirement of former Article 966(G)(2) was removed.

elsewhere in this opinion, the Jones were never parties to the Marables' Suit. Thus, the Marables' Suit involved different parties and is immaterial.

For the same reason, as DTNA points out, whether former La. C.C.P. art. 966(G) might have permitted or precluded different parties—the remaining defendants in the Jones' Loss of Consortium Suit—from litigating DTNA's fault for the 2012 accident is immaterial to the dispute presented here.[9] Again, the parties to DTNA's summary judgment motion were the Jones and DTNA; the preclusive effect of the January 24, 2014 judgment on different parties has nothing to do with the dispute here of whether issue preclusion applies. Stated otherwise, the trial court's refusal to specify the application of La. C.C.P. art. 966(G) in the January 24, 2014 judgment has no impact on the issue presented here of the binding effect of the judgment as between the parties to the judgment.[10] Accordingly, the Jones' arguments that the actually litigated requirement is not met are unpersuasive.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**

---

[9] *See Richards v. Gettys*, 332 So.2d 561, 562 (La. App. 4th Cir. 1976) (observing that "in a subsequent trial in a different parish of a suit arising from the same accident, defendant was found to be concurrently negligent" and that "the liability finding in the other case is immaterial to our review of the evidence in the present case").

[10] As DTNA points out, in *Barrilleaux v. Bd. of Supervisors of La. State Univ.*, 14-1173 (La. App. 1 Cir. 4/24/15), 170 So.3d 1015, the case the Jones cite in support of this argument, the sole issue was whether a "no evidence" summary judgment would have preclusive effect on entities who were not parties to the summary judgment motion. Moreover, as DTNA further points out "[n]o party in *Barrilleaux* suggested that the plaintiff who lost the summary judgment motion in that case would be free to 'regroup' and assert the same claim against the same defendant in a later litigation; neither did the *Barrilleaux* court."