In re Derek DAVIS, possibly a/k/a Ian Davies, possibly a/k/a Brian Rappaport; and Harriette Turia Davis, a/k/a Mrs. Derek Davis, Debtors.

Derek DAVIS and Harriette Turia Davis, Appellants,

v.

CENTRAL BANK, et al., Appellees.

BAP No. CC–81–1147–GKV.
Bankruptcy No. LA–80–04522RO.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued June 17, 1982.
Decided Sept. 30, 1982.

Derek Davis, pro se.

Roy Zukerman, Long Beach, Cal., Jack Carlow, Deputy City Atty., Los Angeles, Cal., for appellees.

## OPINION

Before GEORGE, KATZ and VOLINN, Bankruptcy Judges.

GEORGE, Bankruptcy Judge:

The debtors, DEREK DAVIS and HARRIETTE TURIA DAVIS, appeal from the order for relief entered in their involuntary Chapter 7 case on June 17, 1981. We AFFIRM.

## I. BACKGROUND

On May 20, 1980, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the Davises by two of their creditors, CENTRAL BANK and JAIME URREGO, d/b/a WILSHIRE INTERIORS. That same day, lis pendens were filed against the Davises' real property located in Los Angeles County, California.

Following a status conference held pursuant to the involuntary petition, in which the Davises were advised by the bankruptcy court to retain counsel, the debtors obtained the services of the Los Angeles-based law firm of Stutman, Treister & Glatt. The debtors' counsel thereupon moved for a dismissal of the creditors' petition on the grounds that an insufficient number of creditors had joined therein and that the petition had been filed in bad faith. This motion was, however, denied by the trial

court and no appeal was taken from the court's determination.

On August 12, 1980, after the trial court's denial from the bench of the debtors' dismissal effort, an answer, counterclaim, and verified list of creditors were filed by the Davises. Thereafter, several additional creditors joined Central Bank and Mr. Urrego in petitioning for a Chapter 7 order for relief.

In or before October 1980, a number of "philosopical differences" surfaced between the debtors and their counsel, causing the latter to seek to withdraw from their representation of the Davises. The debtors at first supported this motion, but then expressed some misgivings at losing the aid of their attorneys. Nevertheless, at the time of the hearing on this motion, the debtors did not object to the withdrawal of counsel. On November 4, 1980, the order granting this motion was entered.

Following the withdrawal of the Stutman, Treister & Glatt firm, the Davises claim to have actively sought new counsel. Nonetheless, they allege that they were rebuffed in their efforts by the unwillingness of attorneys to serve them without the prior advancement of fees. Inasmuch as their assets were subject to the control of the bankruptcy court, the debtors assert that they had insufficient funds to retain such counsel.

As important as these financial problems, however, appears to have been the Davises' desire to obtain counsel they deemed to be "competent." In their response to a motion by the petitioning creditors to compel answers to an aborted deposition, the debtors set forth their difficulties in gaining the aid of counsel in the following terms:

"Because of the vast differences in legal language used constantly by lawyer[s] and the terms used by the Davis's in everyday life, it was and is difficult for the Davis's to communicate with legal counsel. Efforts to protect rights and interests are misunderstood because of this language barrier. It is difficult for the Davis's to accept the statement: 'Leave it to your lawyer.'

"The Davis's have no doubts that many persons are in jail and many are declared bankrupt unjustifiably because they did leave it to a lawyer who did not understand and who could not communicate.

"The Davis's want a firm that can bridge the communication barrier and adequately protect their cherished rights and want all proceeding[s] to cease until this is accomplished.

. . . .

"United States Justice Warren Berger [sic] has publicly stated that the only ten percent of the nation's lawyers are competent to practice in our trial courts. This adds further confusion to the Davis's dilemma. With only ten percent of the nation's lawyers to choose from, the Davis's need more time to secure and feel comfortable with legal counsel."

Appellants' Opening Brief, Exhibit 2, at 3–4.

On March 16, 1981, Harriette Turia Davis filed an objection to further proceedings until she could obtain her own counsel. No action seems to have been taken on this objection. On April 17, 1981, the debtors each made a demand for a jury trial on the facts raised by the involuntary petition and their responses thereto. On April 20, 1981, the trial court *sua sponte* set April 23, 1981, as the date for the hearing on this remand. Counsel for the petitioning creditors were informed by mail and telephone of this hearing date. Since the debtors had left no telephone number with the trial court, they were given only written notice of this hearing. The Davises claim that they did not receive this notice until it was too late to appear on their own behalf.

Following the hearing on this jury trial demand, the trial court denied the debtors' request, holding that the Davises had waived any right they might have had to a jury trial by their delay in making their demand. In that same order, the trial court reset the date of trial from May 12, 1981, to June 3, 1981.

By the time of trial, the debtors were still without counsel. Nevertheless, the trial

court required that the hearing on the Davises' involuntary petition proceed and that the debtors be subject to the same rules of courtroom procedure as were counsel for the petitioning creditors. Following this June 3, 1981 hearing, the bankruptcy court found that the requirements of 11 U.S.C. § 303 had been met by the petitioners and entered an order for relief against the Davises.

## II. ANALYSIS OF THE FACTS AND THE LAW

Before beginning its analysis of the issues raised by the Davises in this appeal, the panel must first observe that the debtors have not, among their multiple arguments, raised any question as to the propriety of the trial court's findings of fact or conclusions of law. Similarly, they have not provided the panel with a transcript of the proceedings below. Instead, they have chosen to attack only the manner in which the proceedings below were handled by the trial judge and opposing counsel. At the heart of their attack is the claim that they were denied due process of law in the treatment of their involuntary Chapter 7 case.

Of primary concern to the debtors is their assertion that they were denied the effective aid of legal counsel during the processing of their case. Upon reviewing the totality of the record before it, the panel cannot agree with this claim. Early in the Davises' case, they were given what appears to have been adequate assistance by Mr. John D. Ayer of the Stutman, Treister & Glatt firm. With the withdrawal of Mr. Ayer, which the debtors did not actively oppose, the trial court properly cautioned the debtors of the importance of securing new counsel. Based upon this admonition of the lower court, the debtors now seek to place the onus of their inability to find willing and competent counsel within a reasonable period of time upon the trial judge and opposing counsel.

■ There is no constitutional right to counsel in a legal proceeding unless it is criminal or quasi-criminal in nature. *Ferguson v. Gathright,* 485 F.2d 504 (4th Cir.

1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974); *Cassidy v. United States,* 428 F.2d 585 (8th Cir. 1970); *United States v. Capson,* 347 F.2d 959 (10th Cir.), *cert. denied,* 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965). Therefore, it was not a denial of due process for the trial court to require the debtors to go forward with the trial on their involuntary petition unless, while so doing, the court affirmatively prevented them from obtaining and utilizing counsel of their choice. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Dinitz,* 538 F.2d 1214 (5th Cir.), *reh. denied,* 542 F.2d 1174 (1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977).

■ In light of the seven-month period of time given the debtors to obtain and educate counsel, we can hardly hold that the trial court denied the Davises the effective representation of counsel by any haste in coming to trial. The debtors further argue, however, that they were prevented from retaining an attorney because of the control exercised by the trial court over their assets, following the filing of their involuntary petition. The panel does not find this argument persuasive, either.

■ Nowhere do the debtors claim that their sole source of income was from the property held by the bankruptcy court. Indeed, the record before the panel is devoid of any mention of an actual sequestration of the debtors' funds or property, other than that associated with the sale of their real property located at 1647 Woods Drive, Los Angeles, California. And, counsel for the debtors, himself, approved the order of the bankruptcy court which retained custody of the proceeds of that sale. Moreover, the panel has found no evidence that the debtors ever attempted to obtain a release of their funds, other than by way of their motion to dismiss their creditors' petitions. Finally, the Davises have cited no facts or authority to support the proposition that the trial court operated outside its jurisdiction or discretion in taking custody of the proceeds of sale of their real property. *Cf.*

11 U.S.C. § 303(f) (West Supp. 1982) (permitting a bankruptcy court to so act).

In examining the record supplied it, the panel believes that the debtors' failure to retain counsel was more the result of their own ultra-Diogenean standard for competence than of any lack of funds. We must, therefore, find that the debtors were not denied the assistance of counsel by the trial court, but, rather, by their own choice or delay in making a choice.

■ Additionally, although the debtors maintain that they were denied due process by the trial court's insistence that they follow the same general rules of courtroom procedure as opposing counsel, they point to no specific instance or continuing manner in which they were unduly prejudiced by this requirement. And, as stated earlier, they have not supplied the panel with a transcript, so that it might discover such prejudice by its own effort. We find no denial of due process in this discretionary ruling of the trial court.

■ The debtors' second major basis for appeal stems from the lower court's refusal of their demand for a jury trial. Although the handling of the debtors' demand was somewhat rushed, we do not find reversible error in the court's decision to hear the matter without a jury. "The bankruptcy court *may* order the issues arising under section 303 of title 11 to be tried without a jury." 28 U.S.C. § 1480(b) (West Supp. 1982) (emphasis supplied). Given this discretion, we cannot find fault with the trial court's actions in the absence of abuse. We do not find such abuse in the present case.

The debtors and their early counsel delayed a considerable period of time in making this request, finally doing so shortly before the initial trial date. The Davises then failed to state any excuse for their delay or reason why a jury should be utilized in their case. They simply made a demand under the inapplicable Fed.R.Civ.P. 38(b) and, even then, they ignored the ten-day limitation clearly stated in the text of that rule.

The panel finds no cause to overturn the trial court's order on this ground.

■ The next issue raised by the debtors, their complaint that the trial court erroneously denied their counterclaim for damages, is answered by the Davises' own failure to contest the bankruptcy court's factual findings and legal conclusions. If these findings and conclusions were correct, as the panel must assume, the petitioning creditors could not be guilty of the willful and malicious filing of an involuntary petition in bankruptcy.

■ With respect to the claim of the debtors that the trial court failed to respond to the "Request to Clarify" filed by Mrs. Davis, the panel can only observe that this request constituted an informal solicitation of an advisory opinion. The issuance of such opinions is both outside the authority of federal courts and violative of basic principles of judicial impartiality.

Finally, concerning the decision of the United States Supreme Court in the recent *Marathon Pipe Line* case, we note that the majority therein made the application of their June 28, 1982 decision nonretroactive, while staying the effect of their action until October 4, 1982. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 2880, 2882, 73 L.Ed.2d 598 (1982) The judgment in the present case was entered on June 17, 1981. It would not, therefore, be affected by this high court determination.

## III. CONCLUSION

We find no merit in the debtors' claims of denied due process or equal protection. We have no trial transcript by which to review the trial court's findings of fact and its conclusions of law would properly follow from those factual findings. We further find that, notwithstanding the *Marathon Pipe Line* decision, the trial court had jurisdiction to act in this matter.

AFFIRMED.