**CONSORZIO DEL PROSCIUTTO DI PARMA, Plaintiff–Appellee,**

v.

**DOMAIN NAME CLEARING COMPANY, LLC; Internet News Portals Group, LLC, Defendants,**

and

**Chris Truax, Defendant–Appellant.**

No. 02–56839.

United States Court of Appeals, Ninth Circuit.

Submitted May 19, 2003.*

Filed Oct. 16, 2003.

Chris Truax, Pro Per, La Mesa, CA, defendant-appellant.

James H. Wallace, Jr., Wiley, Rein & Fielding, LLP, Washington, DC, for the plaintiff-appellee.

Before CHOY, FARRIS, and LEAVY, Circuit Judges.

LEAVY, Senior Circuit Judge:

Chris Truax, an attorney appearing pro se, appeals from the district court's entry of a default judgment in the amount of $24,258.00 in favor of Consorzio Del Prosciutto di Parma ("the Consortium"). After failing to appear in the district court proceedings, Truax filed a notice of appeal.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

He did not move to set aside the default judgment or ask for other relief in the district court. On appeal, Truax contends that the Consortium failed to comply with the California requirements for effective service by publication when attempting to effect service of process on him under Fed.R.Civ.P. 4(e)(1). We dismiss the appeal.

## FACTS AND PRIOR PROCEEDINGS

The Consortium is a group of producers of Parma ham, with powers under Italian law to supervise and regulate the production and worldwide marketing of ham sold under the Parma ham mark. In 1996, the Consortium obtained a registration for the PARMA HAM certification mark from the United States Patent and Trademark Office (U.S. Reg. No. 2,014,629).

In January 1997, Chris Truax, as sole manager and agent, filed articles of incorporation for the Domain Name Clearing Company ("DNCC"), a limited liability company, with the business activity of "domain name clearing." In April 1997, DNCC registered the domain name <parmaham.com>.

In April and May 2000, the Consortium attempted to contact DNCC by phone and e-mail regarding the domain name registration, but did not get a response. The Consortium also mailed a demand letter to the address DNCC listed in its domain name registration. The letter was returned because there was no such address. Truax responded to a copy of the demand letter sent to his business address and indicated that DNCC would be willing to negotiate for transfer of the domain name. DNCC rejected the Consortium's offer of $9,000 for the <parmaham.com> domain name and five other prosciutto-related domain name registrations owned by DNCC. The Consortium brought this action on

May 24, 2001, alleging that DNCC violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), by registering and using the domain name <parmaham.com> in bad faith.

The Consortium made unsuccessful attempts to serve DNCC through Truax, its registered agent, at his listed address for service, at his residence, and at his listed business address. The Consortium also unsuccessfully attempted to serve DNCC at the place of business listed on its domain name registration. The Consortium moved for an order permitting substitute service on the California Secretary of State under Cal. Corp.Code § 17061(c)(1), which the district court granted. DNCC was served through hand-delivery of a copy of the summons and complaint to the California Secretary of State on October 13, 2001.

In the meantime, DNCC transferred the domain name <maham.com> to a new limited liability company organized by Truax in August 2001, the Internet News Portals Group ("INPG"). The Consortium filed an Amended Complaint adding INPG and Truax as defendants. The district court entered an order approving service on INPG by substitute service on the California Secretary of State. Neither DNCC nor INPG made an appearance in response to the amended complaint and the district court entered a default judgment against both entities on June 17, 2002.

The Consortium unsuccessfully attempted to serve Truax through personal service at his business address, through a notice and acknowledgment of service sent to Truax by registered mail at both his residential address and his post office box address, and through personal service at his residential address, before moving to serve Truax by publication, pursuant to Cal. Civ. Pro.Code § 415.50.[1]

---

1. Cal. Civ. Pro.Code § 415.50(a) provides: "A summons may be served by publication if

upon affidavit it appears to the satisfaction of

After the district court granted the motion, the Consortium had a notice of the summons published in the San Diego Daily Transcript on April 12, 19, 26, and May 3, 2003. The certificate of publication was served by mail on May 21, 2002, on the four addresses for Truax where service had previously been attempted. Truax did not respond.

On July 16, 2002, the Consortium requested that the clerk of court enter a default against Truax, and served the request on Truax by mail at his business address. Default was entered by the clerk the next day. Truax did not make an appearance and, on August 29, 2002, the Consortium moved for a default judgment against Truax, and mailed copies of the motion to the same four addresses where it had previously attempted to reach Truax. Truax did not appear to contest the motion. On September 24, 2002, the district court entered a default judgment finding that Truax had no right, title, or interest in the <parmaham.com> domain name registration and that an award of attorney's fees to the Consortium in the amount of $24,258.00 was warranted. Truax did not move to set aside the judgment in the district court, but, on October 24, 2002, filed a timely notice of appeal.

## ANALYSIS

Truax' appeal raises the issue whether a party may appeal after entry of a default judgment and raise the issue of sufficiency of service without having moved under either Federal Rule of Civil Procedure 55(c) or 60(b) in the district court. Federal Rules of Civil Procedure 55(c) and 60(b) set forth procedures for a party to move the district court to, respectively, set aside the entry of a default or for relief from judgment. Fed. R. Civ. Proc. 55(c) & 60(b). An appeal to this court "cannot be used as a substitute" for these procedures. *Rohauer v. Friedman*, 306 F.2d 933, 937 (9th Cir.1962).

In *Rohauer*, the appellant allegedly discovered fraud on the district court after judgment but before filing his notice of appeal. We declined to consider the alleged fraud because the appellant failed to proceed in accordance with Rule 60(b). *Id.* At the latest, Truax was aware of the alleged insufficiency of service during the identical time period. The proper method for seeking relief from judgment was to proceed in accordance with Rule 60(b), not an appeal to this court.

We reach this result even though, unlike the appellant in *Rohauer*, Truax never appeared in the district court. He still "must first file an appropriate motion in the court where the default was entered." *In re Lam*, 192 F.3d 1309, 1311 (9th Cir. 1999) (applying Federal Rule of Bankruptcy Procedure 7055(c) to bar an appeal by a party who never appeared in the bankruptcy courts). "Federal courts are not run like a casino game in which players may enter and exit on pure whim. A defaulted party may not [ ] enter litigation, particularly on appeal, on sheer caprice. It must follow proper procedure to set aside the default." *Id.*

Accordingly, we dismiss the appeal. Truax' argument that service was insufficient is not a matter properly before this court.

DISMISSED.

the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article . . . . ''