FILED

AUG 11 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1045-KuFD |
| ) | |
| CHUNCHAI YU ) | Bk. No.   6:15-bk-12567-SC |
| ) | |
| Debtor. ) | Adv. No.   6:15-ap-01153-SC |
| _____ ) | |
| CHUNCHAI YU, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| NAUTILUS, INC., ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on July 28, 2016
at Pasadena, California

Filed – August 11, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding

Appearances:     Appellant Chunchai Yu argued pro se; Samuel R. Watkins of Thompson Coburn, LLP argued for appellee Nautilus, Inc.

Before: KURTZ, FARIS and DUNN, Bankruptcy Judges.

     [*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

The bankruptcy court excepted from discharge, as a debt arising from a willful and malicious injury, a $4 million state court default judgment entered against chapter 7[1] debtor Chunchai Yu and in favor of appellee Nautilus, Inc. The bankruptcy court gave issue preclusive effect to the facts the state court relied upon in entering the default judgment. Based on the issue preclusive effect of these facts, the bankruptcy court ruled that all of the elements were met for a nondischargeable debt under § 523(a)(6).

On appeal, Yu has not directly challenged the bankruptcy court's application of issue preclusion. Instead, Yu contends for the first time on appeal that she never received notice of the district court's default judgment proceedings, even though she does not dispute that she actively participated in the district court litigation for roughly a year prior to the commencement of the default judgment proceedings. Yu further contends that the default judgment should not have been entered while she was incarcerated for trafficking in counterfeit exercise equipment and that she did not have effective assistance of counsel in the nondischargeability adversary proceeding.

We will not consider Yu's allegations of insufficient service for the first time on appeal. Yu's other arguments on appeal lack merit. Accordingly, we AFFIRM.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

**FACTS**

In July 2010, Yu was convicted in federal court of trafficking in counterfeit exercise equipment in violation of 18 U.S.C. § 2320(a). Prior to the conviction, the jury was instructed to find a violation of the statute only if Yu had intentionally trafficked in goods she knew were counterfeit. The exercise equipment was considered counterfeit because it bore false marks which were substantially indistinguishable from the trademarks Nautilus owned and used and because Nautilus did not manufacture the equipment, did not authorize its manufacture and did not authorize the use of its trademarks.

Several months before Yu was indicted, in January 2010, Nautilus commenced a civil lawsuit in federal district court against Yu for (among other things) trademark infringement, trade dress infringement and patent infringement. The civil lawsuit in large part was based on the same allegedly unlawful conduct as the criminal proceedings against Yu. After roughly one year of civil litigation in which Yu actively participated, the district court issued an order to show cause why her answer should not be stricken and default entered against her based on Yu's failure to appear at a scheduling conference.

Yu did not respond to either the order to show cause or Nautilus' subsequent motion for entry of a default judgment. Ultimately, the district court entered an order granting Nautilus' default judgment motion. In the order, the district court ruled that Nautilus was entitled to enhanced statutory damages of up to $2 million for each trademark infringed because Yu had committed "willful" trademark infringement. In so ruling,

3

the district court found that Yu had admitted that she knew that the exercise equipment that she and her husband had been importing from China and selling for many years was counterfeit. In addition, the district court accepted as true Nautilus' allegation that Yu and her husband had imported at least thirty-eight ocean shipping containers filled with the counterfeit exercise equipment. The district court also accepted as true Nautilus' allegation that Yu and her husband continued to import the counterfeit exercise equipment even after some of their shipments had been seized as counterfeit goods by U.S. customs officials.

Based on the alleged volume of imported counterfeit goods, the alleged continued importation of counterfeit goods after some had been seized, Yu's admissions, Yu's criminal conviction, and Yu's failure to comply with the court's orders in the civil litigation, the district court concluded that Yu had committed willful trademark infringement and awarded $4 million in statutory damages against Yu. The district court entered a civil judgment against Yu in December 2011.

Several years later, in March 2015, Yu commenced her chapter 7 bankruptcy case. Within a few months, Nautilus filed its adversary complaint seeking to except from discharge the $4 million civil judgment debt as a debt arising from a willful and malicious injury under § 523(a)(6).

Ultimately, the bankruptcy court disposed of the adversary proceeding by granting summary judgment in favor of Nautilus. According to the bankruptcy court, Yu was barred by the doctrine of issue preclusion from challenging any of the elements for a

4

willful and malicious injury under § 523(a)(6). The bankruptcy court held that Yu was given a full and fair opportunity to litigate in the proceedings leading up to the district court's entry of the default judgment. In so holding, the bankruptcy court noted that Yu had not argued inadequate notice or an absence of due process.

The bankruptcy court also held that the willful and malicious injury elements were actually litigated in the district court. In spite of the disposition of the district court litigation by default judgment, the bankruptcy court reasoned that Yu's active participation in the litigation for roughly a year was sufficient to constitute actual litigation of the willful and malicious injury elements.

Finally, the bankruptcy court determined that the district court litigation resolved the same issues that needed to be resolved in order to find a willful and malicious injury under § 523(a)(6). As the bankruptcy court put it, willfulness for purposes of § 523(a)(6) could be ascertained from Yu's knowledge that the she was importing and selling counterfeit exercise equipment for half price: "Because the Defendant knew she was selling counterfeit Bowflex exercise equipment at half-price, she necessarily must have also known that the Plaintiff's injury was substantially certain to occur as a result of her conduct." Order and Memorandum Decision Granting Plaintiff's Motion For Summary Judgment (Feb. 18, 2016) at 15:26-16:1.

With respect to the bankruptcy court's determination of maliciousness, the bankruptcy court pointed out that three of the four requirements for finding a malicious injury for purposes of

5

§ 523(a)(6) were inherent in the nature of Yu's trademark infringement (wrongful acts, done intentionally, that necessarily caused injury). As for the fourth maliciousness requirement – the absence of just cause or excuse – the bankruptcy court observed that Yu only had pointed to her alleged innocent state of mind as excusing her conduct, but the court held that the preclusive effect of the district court's ruling regarding Yu's knowledge and intent barred her from arguing in the adversary proceeding her allegedly innocent state of mind.

The bankruptcy court entered an amended judgment excepting the $4 million judgment debt from discharge, and Yu timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it granted summary judgment on Nautilus' § 523(a)(6) claim for relief?

## STANDARDS OF REVIEW

We review the bankruptcy court's grant of summary judgment de novo. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). We also review de novo the bankruptcy court's determination that a particular debt is nondischargeable. Carillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002). ("Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo.").

We similarly review de novo the bankruptcy court's

6

application of issue preclusion. Beauchamp v. Anaheim Union High Sch. Dist., 816 F.3d 1216, 1225 (9th Cir. 2016).

**DISCUSSION**

Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries to an entity or its property. Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010); In re Barboza, 545 F.3d at 706. We must separately consider the willfulness and malice elements. Id.; In re Su, 290 F.3d at 1146–47. For purposes of § 523(a)(6), a debt arises from a willful injury if the debtor subjectively intended to cause injury to the creditor or the debtor subjectively believed that injury was substantially certain to occur to the creditor as a result of her actions. In re Ormsby, 591 F.3d at 1206; In re Su, 290 F.3d at 1144-46. And a debt arises from a malicious injury when it is based on: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re Ormsby, 591 F.3d at 1207 (quoting Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001)).

While Yu's opening appeal brief did not directly challenge the bankruptcy court's application of issue preclusion against her, we nonetheless have considered the issue, and we have found no reversible error. In determining whether issue preclusion applies to a federal court judgment, the Ninth Circuit Court of Appeals employs the following standard: "(1) the issue must be identical to one alleged in prior litigation; (2) the issue must have been 'actually litigated' in the prior litigation; and (3) the determination of the issue in the prior litigation must

7

have been 'critical and necessary' to the judgment." Beauchamp, 816 F.3d at 1225.[2]

In giving issue preclusive effect to the district court judgment, the bankruptcy court held that the facts that the district court relied upon in establishing that Yu had engaged in willful infringement for purposes of awarding enhanced statutory damages under 15 U.S.C. § 1117(c)(2) also established that Yu's conduct was willful for purposes of § 523(a)(6). We agree.

We are mindful of the fact that the willfulness standard the district court applied is not the same as the § 523(a)(6) willfulness standard. According to the district court, "Willfulness under [15 U.S.C. § 1117(c)] has been interpreted to mean a deliberate and unnecessary duplicating of a plaintiff's mark in a way that [is] calculated to appropriate or otherwise benefit from the good will the plaintiff ha[s] nurtured **or an aura of indifference to plaintiff's rights**." Order Granting Motion for Default Judgment (Dec. 19, 2011) at 30:10-13 (emphasis added). The fact that the willful infringement standard can be

_____

[2]The bankruptcy court utilized a different Ninth Circuit formulation of the legal standard for issue preclusion, which can be found in United States Internal Revenue Service v. Palmer (In re Palmer), 207 F.3d 566, 568 (9th Cir. 2000):

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

Id. Even if we were to use this alternate standard, the result here would be the same.

8

satisfied by an aura of indifference means that great care must be taken by bankruptcy courts not to simply graft a finding of willful infringement onto a finding of willful injury for purposes of § 523(a)(6). Indifference – reckless or otherwise – is insufficient to satisfy the § 523(a)(6) willfulness requirement. See In re Barboza, 545 F.3d at 707-08.

Nonetheless, it is clear from the district court's factual recitation and from its comments regarding Yu's willfulness that the district court was focusing on the knowing, deliberate and calculated nature of Yu's infringement rather than on any aura of indifference. Among other things, the district court pointed out that Yu had admitted she knew the exercise equipment she was importing and selling was counterfeit. According to the district court, Yu's knowledge that the equipment was counterfeit was further established by her continued importation of the equipment even after some of her shipments had been seized as counterfeit. In addition, the district court relied upon the sheer volume of Yu's business – involving the importation of thirty-eight ocean shipping containers filled with counterfeit exercise equipment – as establishing the deliberate nature of her infringement.

Concededly, the district court did not state the specific words now associated with the § 523(a)(6) willfulness standard. The district court did not state either that Yu subjectively intended to harm Nautilus or that Yu subjectively knew that injury to Nautilus was substantially certain to occur. Even so, by deliberately and intentionally trading on Nautilus' goodwill, Yu must have known that harm to Nautilus was substantially certain to occur.

9

Our conclusion is consistent with both In re Jercich and In re Ormsby. In In re Jercich, the Ninth Circuit Court of Appeals relied on a state court's findings after a bench trial to hold that the resulting state court judgment debt arose from a willful and malicious injury. In re Jercich, 238 F.3d at 1208-09. The In re Jercich court explained that Jercich had acted willfully within the meaning of § 523(a)(6) based on the following reasoning:

> As the state court found, Jercich knew he owed the wages to Petralia and that injury to Petralia was substantially certain to occur if the wages were not paid; and Jercich had the clear ability to pay Petralia his wages, yet chose not to pay and instead used the money for his own personal benefit. He therefore inflicted willful injury on Petralia.

Id. However, in the facts as recited by the Ninth Circuit, the state court never explicitly stated what Jercich actually knew or believed regarding whether harm was substantially certain to occur as a result of his conduct. Id. at 1204. Instead, according to the Ninth Circuit, the state court found that Jercich had willfully and deliberately withheld payment of commissions and vacation pay from the creditor in a manner that was oppressive within the meaning of California Civil Code § 3294. Nothing in that statutory definition of oppression or in the state court's findings directly spoke to Jercich's subjective knowledge or belief of harm to the creditor. Thus, the Ninth Circuit apparently read Jercich's subjective knowledge of harm into the state court's findings as a necessary corollary to what the state court did specifically find.

More recently, in In re Ormsby, the Ninth Circuit employed similar reasoning to hold that Ormsby had willfully injured a

10

competing title company by misappropriating that title company's proprietary information. The In re Ormsby court ruled that the preclusive effect of a state court's findings supported the bankruptcy court's grant of summary judgment in favor of the creditor title company on its § 523(a)(6) claim for relief. In so ruling, the Court of Appeals rejected Ormsby's argument on appeal that the state court's findings should not have had a preclusive effect on the § 523(a)(6) willfulness issue, as follows:

> Ormsby contends section 523(a)(6) does not apply because the state court did not adopt a finding that Ormsby had the subjective intent to injure FATCO or that he believed that FATCO's injury was substantially certain to occur as a result of his conduct. Ormsby must have known that FATCO's injury was substantially certain to occur as a result of his conduct. Because Ormsby paid for access to the title plants for 2000 until present, he was necessarily aware that his use of FATCO's title plants and other materials without paying for them had an economic value.

In re Ormsby, 591 F.3d at 1207.

Reading In re Ormsby and In re Jercich together, they stand for the proposition that, for purposes of § 523(a)(6) willfulness, "[t]he Debtor is charged with the knowledge of the natural consequences of his actions." In re Ormsby, 591 F.3d at 1206. Applying that same principle here to the district court's findings, Yu necessarily must have known that her importation and sale of goods she knew to be counterfeit and her deliberate and calculated attempts to obtain personal gain by trading on Nautilus' goodwill were substantially certain to cause injury to Nautilus. Therefore, the bankruptcy court correctly determined that the facts the district court relied upon were sufficient to establish, for issue preclusion purposes, § 523(a)(6)

11

willfulness.

As for the maliciousness requirement, we agree with the bankruptcy court that the district court's determination that Yu knowingly imported and sold counterfeit goods and that she deliberately sought to trade on Nautilus' goodwill readily establishes three of the four maliciousness elements: legally wrongful acts, done intentionally, which necessarily caused injury.

This only leaves the fourth and final maliciousness element – the absence of just cause or excuse. The bankruptcy court noted that the summary judgment record did not contain any suggestion of just cause or excuse, except perhaps for Yu's contention that she subjectively believed that her actions constituted lawful trade in "grey market" goods. The bankruptcy court held that this contention was barred by the preclusive effect of the district court's findings regarding Yu's knowledge and intent. Moreover, the Ninth Circuit has held that the debtor's subjective intent cannot justify or excuse conduct that otherwise is legally wrongful. Murray v. Bammer (In re Bammer), 131 F.3d 788, 793 (9th Cir. 1997). Likewise, Yu's pleas that she was simply trying to provide for her family also do not constitute just cause or excuse. In re Bammer held that such a "standardless, unmeasurable, emotional, and nonlegal concept such as compassion" for family members could not, as a matter of law, serve as just cause or excuse for committing a legally wrongful act. Id.

In sum, we perceive no error in the bankruptcy court's holding that the district court's factual determinations

12

established, for issue preclusion purposes, § 523(a)(6) maliciousness.

Yu's arguments on appeal focus on her perception of unfairness regarding the district court's entry of the default judgment. She indicates that she was unable to defend herself in the district court because of the criminal proceedings then pending against her. Apparently, she contends that her supposed invocation of her Fifth Amendment right against self-incrimination should not have been used against her in the civil proceedings. But this contention ignores the fact that her answer was stricken and the default judgment was entered against her for litigation conduct that took place after her criminal conviction. The striking of Yu's answer in the civil litigation and the subsequent default judgment proceedings were a direct result of Yu's failure to attend a scheduling conference and her failure to respond to the district court's order to show cause in January 2011. At the time of these events, Yu's criminal conviction already had occurred in July 2010. Yu has never offered any specific explanation why she could not have appeared for the January 2011 scheduling conference or why she could not have responded to the January 2011 order to show cause.

As for the default judgment itself, Yu claims that she already was incarcerated at the time Nautilus filed its default judgment motion and at the time the district court entered the default judgment, so the district court should not have entered the default judgment against her. However, the fact that Yu was incarcerated does not, by itself, explain why Yu could not and did not participate in the default judgment proceedings, and Yu

13

did not offer any other or further explanation in the bankruptcy court. Federal courts – indeed all courts – are accustomed to presiding over litigation in which one or more of the parties have been incarcerated. Federal courts can and do offer reasonable accommodations to incarcerated litigants, but the incarcerated litigants must ask for such accommodations. On this record, there is no indication that Yu ever requested any accommodation on account of her incarceration. She simply stopped participating in the district court civil lawsuit.

On appeal, Yu alleges for the first time that she did not receive notice of either the default judgment motion or the entry of the default judgment. We will not consider for the first time on appeal Yu's allegations of insufficient service in the district court litigation when she could have made these allegations in the bankruptcy court but did not do so. See Castro v. Terhune, 712 F.3d 1304, 1316 n.5 (9th Cir. 2013); Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988).

Indeed, Yu's belated insufficiency of service argument reminds us of Consorzio Del Prosciutto di Parma v. Domain Name Clearing Co., LLC, 346 F.3d 1193 (9th Cir. 2003). There, the Ninth Circuit dismissed an appeal from a default judgment because the pro se appellant did not first avail himself of the procedures for setting aside the entry of default or for setting aside the default judgment under Civil Rule 55(c) and Civil Rule 60(b), respectively. As the Ninth Circuit put it: "'Federal courts are not run like a casino game in which players may enter and exit on pure whim. A defaulted party may not [ ] enter

14

litigation, particularly on appeal, on sheer caprice. It must follow proper procedure to set aside the default.'" Id. (quoting Investors Thrift v. Lam (In re Lam), 192 F.3d 1309, 1311 (9th Cir. 1999)).

Here, Yu did not seek any relief in the district court from the default judgment and did not appeal the default judgment. Instead, she waited until her appeal from the bankruptcy court's nondischargeability judgment (which relied on the preclusive effect of the default judgment) to raise her allegations challenging the sufficiency of service in the district court's default judgment proceedings. Consistent with Consorzio Del Prosciutto di Parma, we will not consider here Yu's insufficiency of service allegations.

Interpreting Yu's appeal brief liberally, as we must,[3] it might be possible to construe her arguments collaterally attacking the district court judgment as actually challenging the preclusive effect the bankruptcy court gave to the district court's factual determinations. In essence, Yu might be arguing that the facts the district court relied upon were not "actually litigated" within the meaning of the issue preclusion doctrine because the litigation was disposed of by default judgment.

The bankruptcy court correctly addressed this issue. The bankruptcy court analyzed the procedural facts and holdings of three Ninth Circuit cases: (1) Internal Revenue Service v. Palmer (In re Palmer), 207 F.3d 566 (9th Cir. 2000); (2) Federal Deposit

---

[3]We must liberally construe pro se appeal briefs. Keys v. 701 Mariposa Project, LLC (In re Keys), 514 B.R. 10, 15 n.3 (9th Cir. BAP 2014).

15

Insurance Corp. v. Daily (In re Daily), 47 F.3d 365 (9th Cir. 1995); and (3) United States v. Gottheiner (In re Gottheiner), 703 F.2d 1136 (9th Cir. 1983). As noted by the bankruptcy court, federal court default judgments (and dispositions akin to default judgments) ordinarily are not given issue preclusive effect unless the defendant actively participated in the litigation or the defendant engaged in obstruction to impede the progress of the litigation. In re Palmer, 207 F.3d at 568. After considering the varying procedural histories of the above-referenced Ninth Circuit decisions, the bankruptcy court decided that Yu's litigation activity was most analogous to the activity in In re Gottheiner. Therefore, the bankruptcy court reasoned, it would follow In re Gottheiner, which held that the bankruptcy court had properly applied issue preclusion to a prior district court judgment because the defendant had actively participated in the litigation for sixteen months before the plaintiff prevailed on an unopposed summary judgment motion.

In addition to the three decisions analyzed by the bankruptcy court, we consider this case analogous to the Panel's prior decision in Genel Co. v. Bowen (In re Bowen), 198 B.R. 551 (9th Cir. BAP 1996). In In re Bowen, the defendant entered into a stipulated judgment after months of discovery and litigation. Therefore, following In re Gottheiner, we concluded in In re Bowen that the debtor's active participation in the prior district court litigation satisfied the "actually litigated"

16

element for the application of issue preclusion.[4]

In short, the bankruptcy court, here, did not err when it concluded that the "actually litigated" requirement for the application of issue preclusion had been met. Yu's active participation in the district court litigation for roughly a year was sufficient to satisfy this requirement.

Yu also complains regarding the amount of the default judgment, but if there were some error in the calculation of that amount, Yu needed to raise that issue before the district court. For purposes of the nondischargeability proceedings, the entire amount of the $4 million district court judgment flowed from Yu's nondischargeable conduct and thus constitutes nondischargeable debt. See Gomeshi v. Sabban (In re Sabban), 384 B.R. 1, 6-7 &

---

[4]This case is distinguishable from Silva v. Smith's Pacific Shrimp, Inc (In re Silva), 190 B.R. 889, 893-94 (9th Cir. BAP 1995). There, a different BAP panel held that a debtor's participation in a prior district court lawsuit was not sufficiently active to satisfy the actually litigated requirement. Id. The In re Silva panel's holding appears to have hinged on the fact that Silva was a very minor player in the prior district court lawsuit and in the misconduct that led to the filing of that lawsuit:

> The record indicates that whatever role Silva had in Supreme Food's fraudulent scheme, it was minor compared to the other co-defendants who were all subsequently indicted on fifty counts of wire fraud in violation of 18 U.S.C. § 1343, as well as other criminal charges. **In fact, there is little in the record [regarding Silva] except that he was an employee of Supreme Foods.**

Id. at 894 (emphasis added). Here, in contrast, Yu was a central character in the prior trademark infringement lawsuit brought by Nautilus, and the district court specifically determined that Yu had admitted she knowingly imported and sold counterfeit goods. These facts effectively distinguish the case before us from In re Silva.

17

n.6 (9th Cir. BAP 2008), aff'd, 600 F.3d 1219 (citing Cohen v. de la Cruz, 523 U.S. 213, 218-19 (1998)); Bane v. Sorayama (In re Bane), 2010 WL 6451886, at *8 (Mem. Dec.) (9th Cir. BAP Jan. 15, 2010).

There is only one other issue we need to address. Yu contends on appeal that she had ineffective assistance of counsel in the nondischargeability adversary proceeding. She asserts that her counsel did not raise the points Yu asked him to raise regarding her incarceration at the time of the default judgment proceedings or regarding her being the sole provider for her family. She also claims that her counsel failed to ask Nautilus for a settlement. Even if we were to assume that Yu's counsel in the nondischargeability litigation was less than effective, this fact would not support reversal. There is no guaranteed right to counsel in civil or bankruptcy proceedings – effective or otherwise. Hedges v. Resolution Trust Corp., 32 F.3d 1360, 1363 (9th Cir. 1994); Davis v. Cent. Bank (In re Davis), 23 B.R. 773, 776 (9th Cir. BAP 1982); see also Shepard v. Conklin (In re Shepard), 2009 WL 7809003, *8 (Mem. Dec.) (9th Cir. BAP Nov. 24, 2009) ("A 'full and fair opportunity to litigate' simply means that the debtor had a reasonable chance to appear in court and contest the factual and legal issues raised in the state court action, not that the debtor should have equal footing from a tactical standpoint.").

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's nondischargeability judgment against Yu.